AUGUST v. O'BRIEN et al.

(Supreme Court, Appellate Division, First Department. April 12, 1900.)

1. PLEDGE—REDEMPTION—IMPLIED AGREEMENT.
   The owner of bonds, who had pledged them to defendant as collateral for a note, assigned all his interest therein to plaintiff, who paid the note to obtain possession of the bonds, with defendant's full knowledge that the payment was for that purpose only. *Held*, that there was an implied agreement that the bonds would be delivered to plaintiff on making such payment.

2. SAME—CONVERSION—MEASURE OF DAMAGES.
   Where one, to whom certain bonds are pledged as collateral for a note, agrees with one, to whom the pledgor assigned all her interest in the bonds, to deliver the bonds to such assignee on payment of the note by the latter, he is liable for the value of the bonds, on his refusal to deliver them after accepting and retaining such payment, and not merely for the amount paid to take up the note, and interest thereon.

   Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Henrietta D. August against Miles M. O'Brien and another, as receivers. From a judgment for plaintiff (61 N. Y. Supp. 720), defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Moses Weinman, for appellants.

B. F. Einstein, for respondent.

McLAUGHLIN, J. This action was brought to recover the value of certain bonds alleged to have been wrongfully withheld by the Madison Square Bank, of which the defendants at the time of the commencement of the action were receivers. The complaint alleged, in substance, that on the 19th of July, 1892, one Elias August delivered to the bank four bonds, of the par value of $1,000 each, as collateral security for the payment of a note for $2,000 made by him, and that day discounted by the bank; that some time thereafter, and prior to the time the note became due, August assigned to the plaintiff all his right, title, and interest in the bonds, of which fact the bank had due notice; that when the note fell due the same was paid by the plaintiff, and a demand was then made by her for the return of the bonds, which was refused, notwithstanding the bank had previously agreed that, if she would make such payment, it would make such return to her. The answer, in substance, admitted the making of the note, and the delivery of the bonds to it as collateral security for the payment of the same, but denied that the note was paid by the plaintiff under an agreement that upon such payment it would deliver the bonds referred to to her, and alleged that when

the note was paid the bank held another claim against Elias August, amounting to the sum of $3,650, and that, by the terms and conditions of the note under which the bonds were held, it had a right to retain and hold them as security for the payment of such claim. Upon the issue thus formed the parties went to trial, and substantially the following facts were made to appear by the testimony offered on the part of the plaintiff: That, before the note became due, Elias August assigned to the plaintiff all his right, title, and interest to the bonds, of which fact the bank was notified. That a few days before the note fell due, and after notice of the assignment of the bonds had been given, one Jacob S. August, acting for and representing the plaintiff, had a conversation by telephone with Mr. Blaut, the president of the bank, in which August stated that the plaintiff, for the purpose of obtaining the bonds held by the bank as collateral security for the payment of the note, would pay the note when it became due, and asked if a certified check would be accepted, to which Mr. Blaut replied: "Yes. Send a certified check. We will have the papers all ready for you." In pursuance of this conversation the plaintiff, on the day the note fell due, sent to the Park National Bank, for certification, a check drawn on that bank, with instructions that, after the same had been certified, it should be delivered to the Madison Square Bank in payment of the note and for the bonds above stated; and while her representative was at the Park Bank he was notified that the president of the Madison Square Bank would not accept a certified check in payment of the note, but would insist upon having "the cash," and thereupon the plaintiff's representative procured upon her check $2,000 in cash, which he took and delivered to the Madison Square Bank. As to what took place when the cash was paid to the bank, Mr. Jacob S. August, the person who made the payment, testified (and he was corroborated in some respects by at least one other witness):

"I called there some time before noon, and was ushered into the office of Mr. Blaut. I handed him $2,000, with the remark that this was for the purpose of getting a certain note, and collaterals attached to that note, pursuant to a conversation we had had over the telephone several days previously. Mr. Blaut took the $2,000, * * * and called Mr. Thompson, the cashier. * * * Then Mr. Blaut said to Mr. Thompson: 'There is $2,000. You can now give to Mr. August the paper which we have ready for him.'"

This witness further testified that, after he had made the payment, Mr. Blaut and the cashier left the room in which they were at the time sitting, and a few minutes later Mr. Thompson returned with a paper, which, upon examination, he found was not the note and collaterals, but was simply a receipt for the money paid, and that he immediately demanded an explanation; that he said to Blaut "that he knew what papers I had called for, and in reply Blaut said this was the paper that I was to get, and there was nothing further for me." He stated that he thereupon left the bank, but returned later in the day, and a further conversation was had with Blaut, in which he said:

"I then made another demand for the return of the note and collaterals, and, in case of his refusal to do this, that he should return to me the $2,000 cash which I had handed to him in the morning. He refused to do either of these

things, and said he had given me all that he was going to give me, and that, if that did not suit me, I could try and see what I could do about the matter."

On the day following, the plaintiff called in person, and demanded from the bank the note and bonds, or the return of the $2,000 paid the day before. The bank again refused to deliver to her the bonds, or to return the money paid.

On the part of the defendants the president of the bank was sworn as a witness; and, while he denied that there was an express agreement on the part of the bank to return to the plaintiff the bonds in question, he, however, did not deny that he had stated, in the conversation with Jacob S. August over the telephone, that he would accept a certified check, and when the same was received he would "have the papers all ready." He admitted that Jacob S. August came to the bank, and said he wanted to pay the note; that he then said:

" 'Have you got the cash?' 'Yes.' They gave me the cash, and I sent out for the receipt, and the receipt came in, and I handed them the receipt. They looked at it and said, 'I want the note and collaterals. * * *' I gave Jacob August the receipt at that time, and he was dissatisfied, and wanted the money back. I said: 'No; you have paid that note, and I cannot give it back to you.' I said: 'You see your lawyer about this. I can't give you anything else.' "

He further stated that on the following day, when the plaintiff and Jacob S. August called, Jacob used vile epithets in addressing him,—called him a thief and a robber,—and that he put him out of the bank.

The trial court found that the bank agreed to deliver the bonds to the plaintiff on her paying the note, and that she, relying upon such promise, made the payment, and it directed judgment in favor of the plaintiff for the value of the bonds. After a careful consideration of the record, we are entirely satisfied that the conclusion reached by the trial court is correct. The $2,000 was paid by the plaintiff, if not under an express agreement with the president of the bank, certainly under an implied one, that upon her making such payment the bonds would be delivered to her. The president of the bank knew that the equity in the bonds had been assigned to her, and he also knew that when the payment was made she expected the bonds would be delivered to her. Neither the plaintiff nor Jacob S. August was under any obligation to pay the note, and when the president of the bank accepted the money he knew that it was paid for the sole and only purpose of obtaining possession of the bonds. This he did not deny, and, if he did, his own acts were sufficient, in and of themselves, to establish the contrary. The fact that he refused to accept a certified check shows that he knew that the plaintiff, in making the payment, expected to have the bonds returned to her, and that, if they were not returned, payment on the check could be stopped, but with the cash he could do just what he did do,—retain the money and refuse to deliver the bonds. There is no other explanation for his refusing to accept a certified check. In short, the president of the bank knew that when the plaintiff paid the note she expected a return of the collateral. The money was

paid with that understanding, and it was received by the bank with full knowledge of the plaintiff's purpose in making the payment. It was, therefore, the duty of the bank, under every well-recognized rule of law, either to refuse to accept the money, or to deliver the bonds.

It is, however, suggested that in any event the plaintiff was only entitled to recover the $2,000 paid, and interest thereon. This is not so. The trial court found (and the evidence was sufficient to sustain the finding) that the bank agreed that, if she would pay the note, it would deliver to her the bonds, and she therefore had a right to insist that the bank should carry out its agreement. The value of the bonds was agreed upon, and the trial court was right in directing a verdict for that amount. It is also suggested that the bank had no right, under the terms of the note by which the bonds were pledged, to retain the bonds after the note had been paid. The conclusion reached by us renders it unnecessary to pass upon and determine this question.

The judgment is right, and must be affirmed, with costs. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting). I do not concur in the affirmance of this judgment. The plaintiff's title to the bonds, to recover for the conversion of which this action is brought, rested upon an assignment from Elias August, by which he transferred to the plaintiff the bonds held as security for the payment of a debt of $2,000 by the Madison Square Bank, "for the purpose of securing payment to said Henrietta D. August" of an indebtedness to her of $2,799.99. By that assignment she was authorized to sell the bonds so hypothecated with the Madison Square Bank, and out of the proceeds of such sale to retain and pay to herself the amount of such indebtedness, with interest; rendering the overplus, if any, to the assignor or his assigns. She thus held the bonds as security for the payment of this indebtedness. Notice of this assignment was given to the bank. When the note held by the bank became due, a Mr. Jacob S. August, who was not one of the debtors of the bank, telephoned to the bank that he would come or send the $2,000 at the proper time for the purpose of paying the note, and getting the collaterals which were attached thereto. At this time the notice was given that Jacob S. August represented the plaintiff or the debtors, and the bank had, therefore, no knowledge that he represented any one. If there was any presumption from this conversation, it would be that Jacob S. August represented Elias August, the maker of the note to secure which the bank held the bonds in question. Subsequently Jacob S. August called upon the bank, and handed to the president the sum of $2,000, "with the remark that this was for the purpose of getting a certain note, and collateral attached to that note, pursuant to the conversation we had had over the telephone several days previously." Blaut, the president of the bank, took the $2,000, but refused to deliver the collaterals; at the same time handing to Jacob S. August a receipt, with the statement that that was all he could get. There was nothing in the communica-

tion between Jacob S. August and Blaut or the defendants which purported to come from the plaintiff, or from which an agreement as to the delivery of the bonds for the benefit of the plaintiff could be implied. Blaut testifies that he had a talk with Jacob S. August shortly before the note held by the bank became due, in which Jacob S. August stated that he would send a check from Mr. August to pay this note, and this testimony was not contradicted. When this $2,000 was paid, there was no notice to the bank that it was paid on behalf of the plaintiff, or that there was any agreement with the plaintiff by which these bonds were to be delivered to her upon payment of the amount of the note held by the bank; nor did the bank have any notice that the money that was paid was the money of the plaintiff. It is difficult for me to see upon what principle there could be any obligation upon the part of the bank, on receipt of this $2,000, to deliver these bonds to Jacob S. August. The bank claimed the right to hold them as security for other indebtedness of Elias August, who had deposited them with the bank as collateral security to his note. The bank was not bound to deliver the bonds to the plaintiff, except upon satisfactory evidence that Elias August had transferred the bonds to her, and such evidence had not been furnished to the bank. Certainly, before there was any obligation, express or implied, on the part of the bank to transfer the bonds to the plaintiff, it was entitled to notice of the fact that the payment which had been made to it was the money of the plaintiff, and that the demand for the bonds was made on her behalf. The case is entirely bare of any evidence of such a notice. But, even assuming that the plaintiff is entitled to recover, it seems to me clear that all that she was entitled to was the amount due to her, for which she held the bonds as security. The bonds were transferred to her to secure the payment of a sum of money. That gave her a special interest in the bonds, to the extent of the amount due to her. The proceeds of the bonds over and above so due were to be paid to Elias August, and that amount the bank certainly was entitled to retain. I think, therefore, that the judgment should be reversed.